David Eisenman appearing for the appellant, Marcia Green. I'd like to reserve two minutes for rebuttal, if necessary. This is a tax case that was tried in the U.S. Tax Court in, I believe, February of 2006. There are four issues up on appeal. The first issue is whether the imposition of the substantial underpayment penalty is correct, whether Marcia Green reasonably relied on advice of counsel as to the preparation of her tax return, whether there was substantial authority for the position that she took on her tax return, whether the statutory attorney's fees that were awarded directly by the court to her lawyer, Jeff Faust, were excludable from her income, and whether the exclusion of the trial transcript that the tax court, the trial transcript of the underlying action, the State court litigation that resulted in the judgment that Marcia Green received was improperly excluded by the tax court. I think that these legal issues have been fully briefed, but there are just a couple points that I want to make. In the briefs, in the tax court decision, the tax court judge said that there was a contingent fee agreement and that the attorney's fees paid by statute under the California FEHA statute were taxable to Marcia Green, citing the Senior case and the Vincing case. And we believe that Banks, which is a U.S. Supreme Court case, Senior and Vincent, did not decide the issue that was before the tax court. In Banks, there was a settlement, and the attorney's fees that were part of that settlement were not paid pursuant to a court-ordered fee-shifting statute. And, in fact, in Banks, the court said that Banks brought his claims under a federal statute that authorized fee awards to the plaintiff's attorney, and argues that the taxability of that to the taxpayer plaintiff would be inconsistent with the purpose of statutory fee-shifting provisions. The Supreme Court said we need not address these claims. After Banks settled his case, the fee paid to his attorney was calculated solely on the basis of a contingent fee agreement. In Senior, it was also a settlement. And there was a fee agreement, a contingent fee agreement, unlike this case. And the same thing is true in Vincent. Senior --" Sotomayor, this case might be a bit different. It's under the California statute. It might be a bit different if the court had directed the State of California to make pay the statutory fee award directly to the attorney and nothing else had happened. Because the California case law is that an award under this statute is the property of the lawyer, not the client, right?  That's Flannery v. Prentice. And what happened here was the State --" there was no direction. The State wrote one big check to your client, and your client remitted the court award first, and then they apparently talked, and she sent him some more. Well, Your Honor, that's backwards. Actually, what happened here is the court did order fees to be paid directly by the defendant, the State of California, to Mr. Faust. The check was to Mr. Faust. There was no check from the State of California to Marcia Greene ever. So what you just described is the record. He got the big check and sent the remainder to her? Correct. And the big check included the court-ordered attorney's fees that were specifically ordered by the court, not payable to her, but payable to Mr. Faust. Why did she pay another, what, $300,000? $390,000. They had a discussion after the money was paid. They talked about the fee application that Mr. Faust had made. He explained that the judge pressured him to reduce his hourly rate from 350 to 275. Pressured him to reduce the number of hours that he actually worked to submit on his fee application. He cut that by, I think he said, 20 or 30 percent. Once he applied that money, excuse me, once he filed that fee application, the judge cut it another 25 percent. Marcia Greene asked him after the money had been paid, do you feel that you've been paid enough? And he said, no, I haven't been paid for all the hours I put into this case. She voluntarily agreed to pay more money. Based on what you've just described, understandingly from your client's point of view, the tax court concluded that there was an informal agreement for a contingency fee of 40 percent. What is unreasonable about that? Well, it's unreasonable because it's not what the facts were. Jeff Greene, excuse me, Jeff Faust testified at trial that if he was successful in getting Marcia Greene her job back and was not awarded any fees by the court under the statute, he would not have accepted any fees from her. So I understand your question, but it's not what happened here. What happened here is that she ---- the facts of this case and the arrangements such as they were between your client and the lawyer and conclude that there was no agreement, but a reasonable person could also look at it and say there was an informal agreement to pay 40 percent. I don't believe that's true. I don't believe that it's reasonable to conclude that there was an informal agreement to pay 40 percent until after the money was paid and after the money was in Jeff Faust's trust account. He was ---- he wound up being paid 40 percent? Ultimately. $537,000 by the State of California, which is the only portion that we're arguing should be excluded from her income. We can see that the $390,000 that she voluntarily paid him is taxable to her. Isn't a real problem the alternative minimum tax? That is the problem here, and that's why Congress enacted the Job Creation Act of 2004, and unfortunately it's not retroactive. It doesn't help us a bit. I would like to point out that in ---- Isn't that what Sinyard says? Yes. Basically the thrust of Sinyard is, gee, we'd like to help you, but your real problem is the AMT, and that's up to Congress. That's true in a case factually similar to Sinyard, but this case is not. That is that there was a fee agreement and a settlement. We have court orders, two of them, a court order for statutory fees and a supplemental order directing the State of California to pay money directly to Mr. Faust for his services, not to Marcia Green. It didn't go to Marcia Green. There was no agreement, and thus there was no relief of any indebtedness she might have had to him to pay a fee. Did the court order cover the additional $300,000? No. That was a private voluntary agreement they made subsequently. I'd like to address ---- Okay. You don't think that if there had been no statutorily awarded fees, she wouldn't have had to pay ---- she wouldn't have felt obligated to pay the whole 40 percent? Well, it's quite possible, because Mr. Faust testified that at that point in time approximately half of the cases that he handled, he handled for free without charging any fees because he had been so fortunate in the practice of law and made enough money that he considered himself to be independently wealthy. And I ---- he said in ---- at trial that if she had gotten her job back, he would not have charged her a penny. So I think the answer to that question is no. I need to talk a minute about the penalties. She got tax advice from two competent lawyers, notwithstanding what was said in the tax court decision. Jeff Faust went to the University of Chicago Harvard Law School, worked as a staff attorney for the Ninth Circuit for two years, and worked for 10 years at a tax-oriented practice here in San Francisco. He gave her tax advice. He specifically told her how much to report as taxable income, that being the maximum amount that the jury could have found was income to her based on her own expert's highest estimate of lost wages past, present, and future. The rest had to be for something else, which he concluded, because he was at trial, could have, you know, would have been for personal sickness or personal injury. The case law, unfortunately, is very, very scarce on that issue, on physical sickness. On physical injury, there's a lot of case law. So she got that advice. She got the advice from him that the 1099 was wrong. She got the advice that the issue of including or excluding the attorney's fees was in flux. I think Banks and Bonitas had not yet gone up to the Supreme Court. The Supreme Court had not yet decided it. And then he said you should also consult, just to be on the safe side, another expert, and they found Robert Wood here in San Francisco. He wrote the tax management portfolio on and a published book on the taxation of jury verdicts and settlements. And he gave the exact same advice that Mr. Faust did. The court ignored Mr. Faust's testimony as an expert and mischaracterized Mr. Wood's testimony. You have used your time, but we'll give you a minute for rebuttal. May it please the Court. The controlling question here is whether California's direct payment under FEA to Mrs. Green's attorney, Mr. Faust, of $537,000 in attorney's fees, served to discharge her indebtedness to her attorney. If it did, then under this Court's decision in Synyard and the Supreme Court's decision in O'Connelly, she's required to include that payment in her income. This really is double taxation, isn't it? No, Your Honor. Double taxation is when the same person is taxed twice on a single item of income. Well, let's talk. We're talking about the $500,000? Yes. Okay. The lawyer receives that. That's income to him? Sure. He pays taxes on it? Same thing in banks, Your Honor, Supreme Court decision. And she pays taxes on it? When I pay my plumber out of my wages, I pay taxes on my wages, and my plumber pays taxes on what I pay him for plumbing services. That's not double taxation. That happens every day a million times a day that someone receives taxable income. They pay tax, and then they pay somebody else an amount that's not deductible. The recipient of that amount has to pay tax on it. That's the way the system works. That's never been held to be double taxation. In fact, that same issue was involved in banks where the taxpayer was required to include in her income the amount of her judgment that she was obligated to pay her attorney under a contingent fee agreement, and the court held she couldn't exclude that amount. And, of course, the attorney had to pay tax on what he received. That's the way the tax system works. It's not considered double taxation. If the same income stream flows to multiple people and there's a tax extracted as each person receives income for something they've done. So the government gets to whack it, in effect, twice. I don't accept that, Your Honor. She isn't whacked twice. She only is paying tax once. Do any of the prior cases involve a court-ordered award of attorney's fees? Under a state law regime that makes clear that the award is the property of the lawyer? The Vinson case in the tax court. But in that case, there was a trial court judgment which did award attorney's fees under FIHA. And then there was a settlement on appeal as to the amount of the award, not as to and the settlement basically was about the same amount. And the tax court held it's includable. The critical question is whether the payment discharges a debt of the taxpayer under senior. If it does, it's taxable. The ownership rights of the attorney and his fees really have no bearing. And that is clear from the Supreme Court's decision in Banks. I would remind the court that Banks was a consolidated case in which the court decided not only Banks, which came out of the Sixth Circuit, but Bonetus, which came out of this court. In Bonetus, this court interpreted Oregon law as giving Oregon lawyers an ownership interest in fees due them under a contingent fee agreement. And based on that interpretation of Oregon law, this court held that the taxpayer there was entitled to exclude from her income the portion of her judgment that she was obligated to pay her attorney under the contingent fee agreement. The former Fifth Circuit in Cotman had reached the same decision involving Alabama law. But in Banks, the Supreme Court reversed this court's decision in Bonetus and overruled Cotman, saying in effect that the attorney's ownership rights in a fee under State law are irrelevant to the question of whether the taxpayer is required to include in his or her income the judgment that's earned on her cause of action. Well, the question is, isn't it, whether that payment, direct or not, reduced the indebtedness of the taxpayer? Absolutely right, Your Honor. That's the case we have here. And I would like to ---- That's what I ---- I guess the argument that I heard from your opponent was that because there was no fee agreement at that time, there was no indebtedness that got reduced. Yeah. Well, that's wrong for several reasons. First of all, first, the Flannery case relied on by my opponent makes clear that even where there is no fee agreement, the client is deemed to have agreed to pay his or her attorney the reasonable value of the services. If there is no agreement, that's the law. So it's not a gift anyway. But in this case, there was a fee agreement. The fact that it happened after she had received her judgment and he had received the fees from California are irrelevant. The point is that after all of that happened, Mr. Faust, her attorney, had a discussion with the taxpayer about his fees, and he told her he was not satisfied with the fee award from California, that the judge had unfairly reduced his hourly rate and what have you. And the taxpayer said, well, I want you to be satisfied. What do you think is a reasonable fee for your services? And the taxpayer's attorney said that after talking to other members of the bar, he concluded that 40 percent of the net proceeds would be a reasonable fee. And he testified, and this is set forth on 156 through 159 of the transcript, which is pages 85 to 88 of the Record Act. Is the taxpayer contesting the $300,000? No.  Right. But Mr. Faust testified that they reached an agreement for 40 percent of the proceeds, which comes to $928,000. He further said that he was not going to accept this $928,000 on top of the $537,000 he had already received, but instead the agreement was he would credit Mrs. Green with that payment so that she would only have to pay the remaining balance of $390,000. And that, in fact, is what happened. And based on this testimony, which was uncontradicted, the tax court found that, in fact, the payment from California to Mr. Faust served to discharge pro tanto Mrs. Green's indebtedness to her husband under the fee agreement, belated though it was, it was the agreement, in effect, under which she paid another $390,000 to Mr. Faust. Can we talk about the penalty for a minute? Certainly, Your Honor. The tax court concluded that Mrs. Green did not reasonably rely upon the tax advice of Mr. Wood. Yes, Your Honor. Is there anything in the record where the tax court examined the fact that she sought two opinions? The tax court did not comment on the ---- The answer to my question is no, isn't it? The tax court didn't ---- In its opinion, it did not say anything about Mr. Faust. Mr. Faust was not a tax expert. He said he had some tax, took some tax courses. I think, if anything, and I can't obviously speak for the tax court, but Mr. Faust's ultimate advice to the taxpayer, and this is quoted in our brief, was that I'm really tapped out on my tax expertise in this area. You should speak to Mr. Wood, who is a world-renowned expert on how to deal with this problem. So his advice really was you need to go to Mr. Wood, who's the expert. And Mr. Wood testified that he gave her only preliminary, incomplete advice. He had never gotten to the point of quantifying what amount, if any, she could exclude from her income, that he expected to see her return before it was filed, that she would get an extension so he would have time to do it. But in fact, he never did, and he never gave her any specific advice as to how much, if anything, she could exclude. And that was the tax court's decision. I would like to comment also on the notion that after the fact, Mr. Wood gave a stamp of approval to the amount they did exclude. Well, first of all, I don't think, under the way the statute's written, that it really is relevant as to what you do after you file your return. The question is, was there reasonable cause for the understatement on your return? In other words, did you get advice at the time you filed your return? But even if it is relevant, I think it's important to note that when Mr. Wood was on the stand, he said nothing about giving them any advice after the fact. He wasn't asked about that. He only said, I gave them preliminary incomplete advice before the return. And taxpayers' counsel was at pains when he had the taxpayer and her husband on the stand to elicit testimony from them that after the fact, Mr. Wood had looked at the return, said it looks fine to me, and you don't have to file an amended return. Well, I would suggest that the best evidence of what Mr. Wood told them would be from Mr. Wood himself. And when he was on the stand, they didn't even attempt to elicit testimony from him that that, in fact, had happened. Okay. Your time is just about expired. I just want to ask you one quick question. I guess what strikes people as somewhat offensive about the bank's decision is that without the contingency of, without the award of the recovery, there would have been no obligation to pay the lawyer at all in the way the contingencies work. And as I understand the record in this case of what the lawyer said. But does it make any difference, why shouldn't it make a difference here that this was awarded, these fees were awarded under the California statute? Well, Your Honor, under this Court's decision, the question is whether a payment by a third party on behalf of the taxpayer discharges a debt of the taxpayer to another party. And the Court here found that it did, and the record supports that, that in the end Mrs. Green agreed to pay her attorney $928,000 total fees, that the $537,000 that was awarded to the taxpayer. Now, I would say that even in the absence of a contingent fee agreement, the law is certainly clear in California, if you read the Flannery opinion, that a client can't say I don't owe you anything under a theory of quantum merit. You're always going to owe your attorney the reasonable value of your services. You might get into litigation about what that might be. So there always is a debt. And, in fact, in the Flannery case, the Supreme Court of California said the whole theory for awarding fees under a fee-shifting statute is that the client has incurred an obligation to her attorney for the reasonable value of his services, and that in the absence of such an obligation, there wouldn't be any basis to make a fee award in the first place. It's not intended to be a windfall. So all of this supports our argument that there was, in fact, a debt owing from Mrs. Green to her attorney, that that was satisfied to the tune of $537,000 by California's direct payment, and that under Seniord and Old Colony, it's income to her. We understand. Thank you, Your Honor. It's not correct to cite Seniord for the proposition that a payment directly to the attorney who rented the services, who got a court order, and fees that are under State law, his, are taxable to the taxpayer. That was not the set of facts in Seniord. If Seniord said that, or if Vincent said Seniord said that, which it does, it's a mischaracterization of what the holding was in Seniord. To answer your question, Your Honor, it's not a double tax, but it effectively works as a double tax because it's a miscellaneous itemized deduction. And because of the operation of the alternative minimum tax, the government does get its tax twice. She gets the deduction, but she doesn't get the benefit of the deduction. I have a quick factual question. Wood testified? Yes. Was he asked either on direct cross or redirect? Was he asked during his testimony whether his post-filing opinion was different from his pre-filing advice? I honestly don't recall. I don't think so. But his billing statements were in evidence, and there was, in fact, a meeting after. My question is very specific. You just don't recall? I don't believe it was. Okay. All right. But both taxpayers testified that they had a meeting or, excuse me, yeah, well, Marcia Green and her husband, they filed separate returns, went and showed the return that Marcia had filed to Mr. Wood, and he said it was clear, it was okay, and it needed to be amended. And he had an obligation, if it was wrong, to say it needed to be amended. And if he had said it needed to be amended, she would have amended it. She was trying to report the proper tax here. And although she was kind and generous to Mr. Faust after the judgment, I would implore the Court not to hold that against her. We're only talking about the statutory fees here. If she had said to Mr. Faust, I mean, I'm hoping that the result would not be different here if she had said to Mr. Faust, I don't care that you feel that you've been underpaid. You got fees directly from the State of California under a fee agreement, excuse me, under a fee-shifting statute. There's no agreement here, and I'm not going to pay you another dime. I would hope that the result would be the same as in this case, where she was generous and said, yes, you worked and put in over 2,000 billable hours here, and I will give you some more money voluntarily. But that the statutory fees, and no case has ever decided this. This is a case of first impression here. The statutory fees that were awarded directly to Faust, paid to Faust, that under State law are Faust's own property that she has no rights to, should not be taxable income to Marsha Green. Thank you. Thank you, counsel. The matter is to argue, be submitted for decision.
judges: Schroeder, Canby, Hawkins